UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT BLAZER, | ) | 1:11CV2780 |
| | ) | |
| Petitioner | ) | JUDGE JEFFREY HELMICK |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| TIM BRUNSMAN, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMMENDATION |

McHARGH, MAG. J.

The petitioner Scott Blazer ("Blazer") filed a petition for a writ of habeas corpus arising out of his 2009 conviction for rape in the Cuyahoga County Court of Common Pleas. (Doc. 1.) In his petition, Blazer raised four grounds for relief:

1. The trial court erred in excluding at trial a tape recording made by the alleged victim, in violation of my rights of confrontation and right to present a defense under the 6th and 14th Amendments of the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

2. The trial court erred in excluding at trial any cross-examination of the alleged victim, or any presentation of defense testimony, as to a statement made by the alleged victim, in violation of my rights of confrontation and right to present a defense under the 6th and 14th Amendments of the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

3. I was denied the effective assistance of counsel, in violation of my rights under the 6th and 14th Amendments of the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

1

>    4.  I was denied my right to a fair trial, as protected by the Due
>    Process Clause of the 14th Amendment of the U.S. Constitution, and
>    Article I, Section 10 of the Ohio Constitution, by the trial court's
>    excessive and accusatory cross-examination of me in front of the jury.

(Doc. 1, § 12.)  Blazer filed his petition pro se, but then counsel filed an appearance

in his behalf.  (Doc. 6.)  Counsel then filed, with leave of court, an amendment to the

petition, adding another ground for relief, entitled "Ground Three," but which this

court will consider the fifth ground:

>    [5.]  Petitioner's right to due process of law, as protected by the Due
>    Process Clause of the Fourteenth Amendment to the United States
>    Constitution, was violated by the application of a harmless error
>    standard that did not consider the probable impact of the excluded
>    evidence upon the jury, which resulted in a decision that was contrary
>    to, or involved an unreasonable application of clearly established
>    Federal law, as determined by the Supreme Court of the United
>    States.

(Doc. 7; see also doc. 9.)

The respondent has filed a 65-page Return of Writ (doc. 8), but Blazer has not

filed a Traverse.  Counsel for respondent is admonished to abide by the Local Rules

of this court, which provide that, without good cause shown, memoranda in cases

such as this must not exceed twenty (20) pages.  Local Rule 7.1(f).  In addition, any

memorandum over fifteen (15) pages must have a table of contents, a table of

authorities cited, a brief statement of the issue(s) to be decided, and a summary of

the argument presented.  LR7.1(f).

2

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

> T.L. knew Blazer because her mother was married to his brother and
> she considered Blazer her uncle.  Life at home was rough for T.L.
> because her mother and step-father did not get along, so T.L. began
> spending more time with her 42-year-old uncle.  In November 2006,
> 13-year-old T.L. spent the night at Blazer's house and stayed up late
> using the computer.  The next morning, the state alleged that Blazer
> climbed into the bed T.L. was sleeping in and performed oral sex on
> her.[FN2]  After this incident, T.L. continued her friendship with Blazer
> and, at one point, Blazer gave her a diamond "promise" ring.  Blazer
> told T.L. that it meant that he would keep everything she told him and
> everything that happened between them a secret.
>
>> [FN2].  The jury acquitted Blazer of all charges relating to
>> this incident.

> On January 26, 2008, T.L. went to Blazer's house for a family dinner.
> After everyone left, Blazer and T.L. began making vodka drinks.  T.L.,
> who was now 15 years old, testified she consumed at least a quarter of
> the bottle of vodka.  She was also smoking and she played on the
> computer while her uncle sat on a futon and listened to music.  After a
> while, T.L. felt sick, ran to the bathroom, and vomited.  Blazer followed
> her and helped her clean up her vomit, which was all over the
> bathroom.  She called a friend and told him that she had been drinking
> and got sick.  The friend recommended she eat some bread.  At the
> time, T.L. was wearing a shirt, underwear, boxer shorts over her
> underwear, and baggy sweat pants.

> T.L. testified that the next thing she remembered was waking up in
> Blazer's bed, with Blazer talking about "finishing."  Her uncle was
> naked and T.L. realized she did not have any bottoms on, her bra was
> unhooked, and her shirt was pushed up.  T.L. testified that Blazer was
> on top of her and had his penis inside of her.  She told the jury she was
> scared and asked Blazer "what are you doing" and "what time is it."
> T.L. stated that after Blazer was "finished," he gave T.L. the boxer
> shorts she had been wearing.  T.L. testified she was still drunk and
> tired so she fell back asleep.  At some point, she received a phone call
> from a friend and fell back asleep.  Blazer woke her up around 8:30
> a.m., telling her breakfast was ready.  T.L. testified she got dressed

3

and went into the kitchen, where Blazer was sitting with his girlfriend, who had just arrived.  At one point, Blazer told T.L. he was "sorry," but she just ignored him.

When T.L. got home the next day, she threw her underwear and boxers in her trash can and showered.  T.L. called a friend to tell her what happened, and also tried to call Blazer.  A few days later, the police came to her house to investigate the incident after her friend's mother reported what had happened to the police.  T.L.'s mother came home, and T.L. told her what happened.  T.L.'s mother retrieved T.L.'s underclothes from the trash can and turned them over to the police. The Ohio Bureau of Criminal Investigation tested the underclothes, and the results showed that Blazer could not be excluded as a minor source of the DNA found on the boxer shorts.

During cross-examination of T.L., defense counsel asked T.L. if she ever left a provocative message on Blazer's answering machine.  T.L. stated she had not.  Counsel sought permission from the court to play a tape recording, which was allegedly a message T.L. left on Blazer's answering machine.  The state objected, claiming they had not been provided the tape recording during discovery.  The trial court recessed the jury to discuss the recording.  On the recording, a girl is heard saying:  "Hey, Scott, um, could you call me back? I kind of miss you.  I miss your big long d* * * in me.  So hot.  Anyways, just call me back. All right.  Bye, baby."

The trial court excluded the recording from evidence finding that 1) it was error for the defense to fail to turn the tape over during discovery and 2) the tape had not been properly authenticated.

At the close of the state's case, the trial court dismissed one rape count pursuant to Blazer's Crim.R. 29 motion for acquittal.

Blazer testified in his own defense.  He denied the 2006 incident ever happened.  As to the January 28, 2008, incident, he testified that he had fallen asleep and woke up when he realized someone was in his bed.  He testified that "someone" began kissing him and fondling him, but he did not know who it was.  He stated he had sexual intercourse with the unknown person.  He testified that he did not know who he was having sex with, but it was not uncommon for him to have sex with his girlfriend in the middle of the night.  He further testified that he did not know if it was his girlfriend he was having sex with because he had been drinking.  Finally, Blazer testified that he became aware

4

he had sexual intercourse with T.L. after he was called for a family meeting. He admitted he knew that something had happened between him and T.L. but he did not know "how far it went."

The jury convicted Blazer of one count of rape, pursuant to R.C. 2907.02(a)(1)(c), which requires proof that the other party's "ability to resist or consent is substantially impaired," and acquitted him on all other charges. The trial court sentenced Blazer to nine years in prison.

(Doc. 8, RX 10, at 1-4; State v. Blazer, No. 93980, 2010 WL 5487145, at *1-*2 (Ohio Ct. App. Dec. 23, 2010).)

Blazer filed a timely notice of appeal, and set forth the following four assignments of error:

1. The trial court erred in excluding at trial a tape recording made by the alleged victim, in violation of Defendant's rights of confrontation and right to present a defense under the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

2. The trial court erred in excluding at trial any cross-examination of the alleged victim, or any presentation of defense testimony, as to a statement made by the alleged victim, in violation of Defendant's rights of confrontation and right to present a defense under the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

3. The Defendant was denied the effective assistance of counsel, in violation of Defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

4. The Defendant was denied his right to a fair trial, as protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section 14 of the Ohio Constitution, by the trial court's excessive and accusatory cross-examination of the Defendant.

(Doc. 8, RX 7.)  The court of appeals affirmed the conviction.  (Doc. 8, RX 10; Blazer, 2010 WL 5487145.)  Blazer filed a motion for reconsideration on the first two assignments of error (doc. 8, RX 11), but the appellate court denied the motion (doc. 8, RX 13).

Blazer appealed to the Supreme Court of Ohio, raising the following proposition of law:

> 1. The crime of rape under [Ohio Rev. Code] § 2907.02(A)(1)(c) requires proof that a person's judgment or cognitive abilities were so substantially impaired that the person could not be deemed to have consented to sexual conduct.

(Doc. 8, RX 15.)  On May 25, 2011, the state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 17; State v. Blazer, 128 Ohio St.3d 1501, 947 N.E.2d 683 (2011).)

Blazer then filed a timely petition for a writ of habeas corpus in this court.


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a

6

decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Several of the grounds put forward by Blazer allege violations of the Ohio Constitution.  The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any

7

alleged violation of the Ohio Constitution is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).


## III.  PROCEDURAL DEFAULT

### A.  First Four Grounds

The respondent contends that the first four grounds of the petition were not fairly presented to the state courts, because the claims were never raised before the Supreme Court of Ohio.  (Doc. 8, at 12-21.)

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).  Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)).   The respondent argues that Blazer's claims were not properly exhausted in state court.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  The

exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

Although Blazer raised several claims at the Ohio Court of Appeals through his direct appeal, he only raised a single claim before the Supreme Court of Ohio. Before that court, Blazer set forth the following proposition of law:

> 1. The crime of rape under [Ohio Rev. Code] § 2907.02(A)(1)(c) requires proof that a person's judgment or cognitive abilities were so substantially impaired that the person could not be deemed to have consented to sexual conduct.

(Doc. 8, RX 15.) Blazer asserted that his appeal presented the following question for the high court: "Is it improper for a jury to consider an alleged rape victim's after-the-fact relationship with the defendant in determining whether, at a previous time, the alleged victim was so intoxicated that their previous sexual relations constituted rape?" (Doc. 8, RX 15, at 1.) None of the constitutional claims in Blazer's original habeas petition were presented to the state high court.

Res judicata would bar Blazer from litigating any issues which could have been raised on direct appeal, but were not. State v. Perry, 10 Ohio St.2d 175, 180, 226 N.E.2d 104, 108 (1967). The Supreme Court of Ohio will not consider a

9

constitutional question which was not properly raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d at 769; City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

Blazer has failed to properly exhaust his claims by giving the state high court a full and fair opportunity to rule on his constitutional claims.  Rust, 17 F.3d at 160, (citing Manning, 912 F.2d at 881).  Blazer cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)).  Where state court remedies are no  longer available to the petitioner, procedural default and not exhaustion bars habeas review.  Id.  Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred.  Id. at 807.  Blazer has failed to file a traverse, thus has made no showing of cause and prejudice.

The petition should not be granted on the basis of any of the first four grounds because they have been procedurally defaulted.

10

### B.  Fifth Ground

The respondent also contends that the fifth ground (asserted in the motion to amend as "Ground Three," see doc. 7, at 1) has been procedurally defaulted.  (Doc. 8, at 23.) The fifth ground asserts that the state court of appeals' harmless error analysis was contrary to, or involved an unreasonable application of, clearly established federal law.  See generally doc. 7.  The respondent argues that no constitutional error was presented to the state supreme court.  (Doc. 8, at 23-24.)

### 1.  Motion for Reconsideration

The "harmless error" issue first arose in the appellate court's determination of Blazer's direct appeal.  The court of appeals found the trial court erred in excluding the tape from evidence, but determined that the error was harmless.  In his motion for reconsideration, Blazer asked the court to reconsider its determination that the trial error was harmless with regard to his first two assignments of error on appeal.  (Doc. 8, RX 11, brief in support, at 1.)

Blazer argued that the trial court's exclusion of the voice message, allegedly left by the victim on Blazer's answering machine, and any testimony regarding same, was not harmless error.  First, Blazer argued that, because the victim denied leaving the message, it was impeachment evidence, which was improperly excluded.  (Doc. 8, RX 11, brief in support, at 2; see also doc. 8, Trial Tr., v. II, pp. 344-345.)

Blazer's main argument was that the message was relevant to the jury's "determination of whether [the victim's] intoxication indeed so substantially impaired her that it left her incapable to giving consent to sexual activity."  Id.

Blazer argued that the message was "wholly inconsistent with her claim that she was so substantially impaired at the time of the incident that she could not be deemed to have consented to it."  (Doc. 8, RX 11, brief in support, at 4; see also doc. 8, Trial Tr., v. II, pp 350-351 ("speaks directly to the issue of consent").)

Therefore, the court finds that Blazer raised the argument in his motion for reconsideration that his due process rights were "violated by the application of a harmless error standard that did not consider the probable impact of the excluded evidence upon the jury."

## 2.  Appeal to Supreme Court of Ohio

In his memorandum in support of jurisdiction, Blazer raised the following proposition of law:

> 1. The crime of rape under [Ohio Rev. Code] § 2907.02(A)(1)(c) requires proof that a person's judgment or cognitive abilities were so substantially impaired that the person could not be deemed to have consented to sexual conduct.

(Doc. 8, RX 15.)

At first glance, this might seem to present a sufficiency of the evidence claim. However, Blazer asserted that his appeal presented the following question for the high court:  "Is it improper for a jury to consider an alleged rape victim's after-the-fact relationship with the defendant in determining whether, at a previous time, the alleged victim was so intoxicated that their previous sexual relations constituted rape?"  (Doc. 8, RX 15, at 1.)  "The question presented here is whether the jury should have been allowed to consider that message in making its decision on

12

whether her ability to consent was substantially impaired." Id. at 9.  Blazer briefly stated that the appellate court's harmless error determination was wrong, but Blazer's argument, in part, was apparently simply that the trial court's evidentiary ruling was in error.  Id. at 2.

At another point, Blazer presented the legal issue before the court as "exactly how the substantially impaired subsection fits within the overall scheme of the rape statute."  (Doc. 8, RX 15, at 2.)  Blazer argued that the state high court had not given sufficient guidance as to how to interpret the statutory element of substantial impairment.  Id. at 3.

Blazer did not explicitly press a constitutional argument before the Supreme Court of Ohio that the appellate court's application of harmless error review violated his constitutional due process rights.  Nonetheless, Blazer raised the impeachment issue in terms sufficient to allege a denial of a specific constitutional right.  See, e.g., McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (factors whether federal claim is fairly presented).

### 3.  Harmless Error Review

Here, the state court of appeals applied harmless error review, and ruled that excluding the tape was harmless, given the elements of the offense:

> Since we have found that the trial court erred in excluding the tape from evidence, we must next consider whether that error was harmless or if it affected Blazer's substantial rights.
>
> Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

Blazer was convicted of rape under R.C. 2907.02(A)(1)(c), which states: "No person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired * * *."

The Ohio Supreme Court has held that substantial impairment must be established by demonstrating a present reduction, diminution, or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct.  State v. Zeh (1987), 31 Ohio St.3d 99, 103–104, 509 N.E.2d 414.  * * * * * . . . voluntary intoxication is a "mental or physical condition" that could cause substantial impairment under R.C. 2907.02(A)(1)(c).  In re King, Cuyahoga App. Nos. 79830 and 79755, 2002–Ohio–2313.

* * * * *

T.L., who was 15 at the time of the rape, testified that she and Blazer made drinks, and she drank a quarter bottle of vodka.  She stated that after vomiting, she called a friend before falling asleep.  After the assault, T.L. called a friend and then fell back to sleep until Blazer later woke her.  Blazer admitted T.L. was intoxicated, he acknowledged helping clean up her vomit, and he admitted he had sexual intercourse with her.  Although he denied he personally gave her anything to drink, he admitted he knew she was intoxicated.

Based on the evidence presented at trial and because the tape recording was not relevant to a finding of guilt under R.C. 2907.02(A)(1)(c), we conclude any error in excluding the tape did not affect Blazer's substantial rights and was therefore harmless.

(Doc. 8, RX 10, at 11-13; Blazer, 2010 WL 5487145, at *6.)

In support of the fifth ground, Blazer quotes Chapman v. California:  "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, [under Fahy v. Connecticut, 375 U.S. 85 (1963)], be conceived of as harmless."  (Doc. 7, at 2, quoting Chapman v. California, 386 U.S. 18, 23-24 (1967).)  Although this case involved the improper exclusion of evidence,

14

Blazer contends that Delaware v. Van Arsdall held that the same standard should be employed, quoting "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman harmless-error analysis." (Doc. 7, at 2, quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).) Blazer contends that the appellate court's harmless-error analysis "completely ignored the issue of whether exclusion of evidence might have contributed to [Blazer's] conviction." (Doc. 7, at 3.)

The Supreme Court has affirmed that a federal habeas court assesses the prejudicial impact of constitutional trial error under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). Fry v. Pliler, 551 U.S. 112 (2007). Under Brecht, the petitioner has to establish that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict," in order to obtain habeas relief. Brecht, 507 U.S. at 637-638; see also Ruelas v. Wolfenbarger, 580 F.3d 403, 411 (6th Cir. 2009), cert. denied, 130 S.Ct. 3322 (2010). To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict. Billingslea v. Jackson, No. 02-1225, 2003 WL 22905326, at *7 (6th Cir. Nov. 21, 2003); Mitzel v. Tate, 267 F.3d 524, 534 (6th Cir. 2001), cert. denied, 535 U.S. 966 (2002) (citing Brecht, 507 U.S. at 637).

Even where the state court applied harmless error review, the habeas court reviews the constitutional error under Brecht, and does not address the issue as whether the state court unreasonably applied Chapman, 386 U.S. 18 (which

15

governs harmless error review on direct appeal). Bauberger v. Haynes, 632 F.3d 100, 104-105 (4th Cir.), cert. denied, 132 S.Ct. 189 (2011); Ruelas, 580 F.3d at 411-412. The Supreme Court has clarified that a habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman. Fry, 551 U.S. at 121-122 (internal citations omitted); see also Ruelas, 580 F.3d at 411 (citing Vasquez v. Jones, 496 F.3d 564, 575 (6th Cir. 2007)).

The jury convicted Blazer of one count of rape, pursuant to Ohio Rev. Code § 2907.02(a)(1)(c), which required finding that the intoxicated 15-year-old victim's "ability to resist or consent [was] substantially impaired" at the time of the incident. The Ohio Supreme Court has stated that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct." State v. Zeh, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414, 418 (1987). The issue is whether the victim's ability was impaired "at the time of the rape incident." State v. Robinson, No. 21317, 2003 WL 22298243, at *3 (Ohio Ct. App. Oct. 8, 2003); see also In Re R.G., No. 08CA121, 2009 WL 1598789, at *6 (Ohio Ct. App. June 5, 2009) ("ample evidence the victim was impaired at the time").

The rape at issue was committed in January 2008. (Doc. 8, RX 1, Indictment, Count 5.) The voice message, allegedly left by the victim, was left on Blazer's

16

answering machine over a year later, in February 2009, about a week after Blazer was arraigned.  (Doc. 8, RX 12, at *5; see also doc. 8, Trial Tr., v. II, pp. 341, 367-368.)  The contents of the Feb. 2009 message do not provide any evidence as to whether the intoxicated 15-year-old victim's "ability to resist or consent [was] substantially impaired" or not at the time of the Jan. 2008 rape.  This court does not find even a reasonable possibility that the error excluding the message would have impacted the jury's verdict on the crucial "substantial impairment" element of the offense.  See Brecht, 507 U.S. at 637-638; Ruelas, 580 F.3d at 411.  See generally Van Arsdall, 475 U.S. at 684 (whether excluded evidence important to criminal charge); Gover v. Perry, 698 F.3d 295, 302 (6th Cir. 2012) (same).

As to the message's impeachment value, the victim denied leaving the message.  (Doc. 8, Trial Tr., v. II, p. 341; v. III, pp. 416-418.)  Blazer argued that he could have presented his father, his sister, and his girlfriend, to authenticate that the victim was the speaker who left this voice message on his answering machine the week after he was arraigned.  See doc. 8, Trial Tr., v. II, p. 351.  The jury would have had to evaluate the credibility and bias of the various persons concerning whether the victim left this voice message or not.  Since she denied leaving it, that could conceivably have impacted her credibility in the jury's eyes, had they chosen to credit the (presumed) testimony of the defendant's father, sister, and girlfriend.

As to the victim's credibility, she was subjected to extensive cross-examination on the events of the day in question, as well as her relationship with Blazer, and other relevant issues and events.  See doc. 8, Trial Tr., v. II-III, pp. 309-

17

398, 409-418; see generally Van Arsdall, 475 U.S. at 684 (extent of cross-examination otherwise permitted); Gover, 698 F.3d at 302 (same).  In addition, Blazer testified in his own defense, admitting however he had had sexual intercourse with the 15-year-old victim, and that both he and the victim were intoxicated.

Nevertheless, the jury weighed the evidence, and found that Blazer had raped the victim by engaging in sexual conduct with her when her "ability to resist or consent [was] substantially impaired" because of her physical condition (intoxicated), and that Blazer knew or had reasonable cause to believe that her ability to resist or consent was substantially impaired, in violation of Ohio Rev. Code § 2907.02(A)(1)(c).

The court finds Blazer has failed to demonstrate the exclusion of the answering machine tape had a substantial and injurious effect or influence in determining the jury's verdict.  He has failed to show more than a "reasonable possibility" that the error might have contributed to the jury's verdict.

The petition should not be granted on the basis of the fifth ground.

IV.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The petition should not be granted on the basis of any of the first four grounds because they have been procedurally defaulted.  As to the fifth ground, where the state appellate court found the constitutional error to be harmless, Blazer failed to demonstrate that the

18

exclusion of the answering machine tape had a substantial and injurious effect or influence on the jury's verdict.

RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   Mar. 28, 2013               /s/ Kenneth S. McHargh
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).