UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Scott Blazer,                                                        Case No. 1:11-cv-02780

        Plaintiff

   v.                                                                MEMORANDUM OPINION
                                                                         AND ORDER

Tim Brunsman,

        Defendant

## INTRODUCTION

Before me are the objections of Petitioner Scott Blazer to the Report and Recommendation of Magistrate Judge Kenneth McHargh regarding Blazer's petition for a writ of habeas corpus. (Doc. No. 13). Respondent Tim Brunsman, Warden of the Lebanon, Ohio Correctional Institution, has filed a reply to Blazer's objections. (Doc. No. 14). For the reasons stated below, I adopt the Magistrate Judge's recommendations as set forth in the Report and Recommendation. Blazer's petition is dismissed.

## STANDARD

A district court must conduct a de novo review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. Pro. 72(b)(3).

In federal habeas corpus proceedings under 28 U.S.C. § 2254, "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *see Brecht*, 507 U.S. at 637 (On collateral review, a federal court must determine "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"). "*Fry* held that *Brecht* applies to all cases on collateral review, and a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable' [under the Anti-Terrorism and Effective Death Penalty Act] – *Brecht* handles the work on this, too." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009).

## BACKGROUND

In evaluating a habeas petition, a federal reviewing court gives "complete deference to state court findings of historical fact unless they are clearly erroneous." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Magistrate Judge McHargh has accurately set forth the factual and procedural background of this case, and I adopt those sections of the Report and Recommendation in full. (*See* Doc. No. 10 at 3-6).

On August 17, 2009, a Cuyahoga County jury convicted Blazer of one count of rape under Ohio Revised Code § 2907.02(A)(1)(c). (Doc. No. 8-1 at 9). After appealing his conviction to the Eighth District Court of Appeals and the Supreme Court of Ohio, Blazer filed a timely petition for a writ of habeas corpus and raised the following five grounds for relief:

1. The trial Court erred in excluding at trial a tape recording made by the alleged victim, in violation of [Blazer's] rights of confrontation and . . . to present a defense under the 6th and 14th Amendments of the [United States] Constitution, and Article I, Section 10 of the Ohio Constitution.

2. The trial court erred in excluding at trial any cross-examination of the alleged victim, or any presentation of defense testimony, as to a statement made by the alleged victim, in violation of [Blazer's] rights of confrontation and . . . to present a defense under the 6th and 14th Amendments of the [United States] Constitution, and Article I, Section 10 of the Ohio Constitution.

3. [Blazer] was denied the effective assistance of counsel, in violation of [his] rights under the 6th and 14th Amendments of the [United States] Constitution, and Article I, Section 10 of the Ohio Constitution.

4. [Blazer] was denied [his] right to a fair trial, as protected by the Due Process Clause of the 14th Amendment of the [United States] Constitution, and Article I, Section 10 of the Ohio Constitution, by the trial court's excessive and accusatory cross-examination of [him] in front of the jury.

5. [Blazer's] right to due process of law, as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, was violated by the application of a harmless error standard that did not consider the probable impact of the excluded evidence upon the jury, which resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

(See Doc. No. 10 at 1-2).

Respondent filed a return of writ, and Blazer did not file a traverse. (Id. at 2). Magistrate Judge McHargh determined Blazer's petition "should not be granted on the basis of any of the first four grounds [for relief] because they have been procedurally defaulted" and should not be granted on the basis of the fifth ground because Blazer failed to demonstrate that the trial court's exclusion of evidence "had a substantial and injurious effect or influence on the jury's verdict." (Id. at 10, 19). Blazer did not object to Magistrate Judge McHargh's recommendation as to the first four grounds in his petition, and I adopt that portion of the Report and Recommendation in full.

## ANALYSIS

Blazer objects to Magistrate Judge McHargh's recommended resolution of the fifth ground for relief, and argues the tape "would have been highly relevant evidence" as to "whether [the victim] understood what was happening" during the night in question. (Doc. No. 13 at 9). Additionally, Blazer argues the excluded tape would have been useful impeachment material and could have caused the jury to further doubt the victim's credibility. (Id. at 10). Respondent argues

3

Blazer's "idiosyncratic interpretation of Ohio law . . . was not part of the interpretation of Ohio law by the state Court of Appeals . . . and was rejected by the Supreme Court of Ohio" in its denial of leave to appeal. (Doc. No. 14 at 3). Respondent asserts Magistrate Judge McHargh "correctly took the state court's analysis of state law and applied it to this case." (Id.).

Magistrate Judge McHargh noted "the state court of appeals applied harmless error review, and ruled that excluding the tape was harmless, given the elements of the offense . . . ." (Doc. No. 10 at 13). The court of appeals stated:

> Blazer maintains that the taped message is clearly inconsistent with [the victim's] allegation that she was so impaired that she was incapable of resisting or consenting to sex with Blazer. But consent is not an element of rape under [O.] R.C. 2907.02(A)(1)(c). In other words, whether [the victim] consented to sexual intercourse with Blazer is not relevant to a finding of rape under [O.] R.C. 2907.02(A)(1)(c). All the state was required to show was that [the victim's] *ability* to resist or consent was [substantially] impaired and the defendant knew or had reasonable cause to believe that her *ability* to resist or consent was substantially impaired.

(Doc. No. 8-1 at 105) (emphasis in original).

In *State v. Zeh*, 509 N.E.2d 414 (Ohio 1987), the Supreme Court of Ohio held that, because the phrase "substantially impaired" is not defined by statute, it "must be given the meaning generally understood in common usage . . . [and] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Id.* at 103-04. While he refers to *Zeh* as "the seminal case" on the issue of substantial impairment, Blazer goes on to state "*Zeh* is of marginal use in determining" what constitutes "an accurate understanding of Ohio law on the 'substantial impairment' section of the rape statute." (Doc. No. 13 at 6). He asserts the *Zeh* court did not decide what constitutes substantial impairment, but instead left that task to the appellate courts. (Id.). Blazer discusses five cases in which voluntary intoxication was offered as proof of the substantial impairment element of O.R.C. 2907.02(A)(1)(c), and asserts "[a] fair reading of the case law indicates that the issue is not

4

whether the alleged victim had consumed alcohol, or even was intoxicated, it is whether she had a sufficient awareness of her surroundings so that one can say she 'knew what was happening.'" (Doc. No. 13 at 6-8). I cannot agree.

In *Zeh*, the Supreme Court of Ohio defined the term "substantial impairment" in the context of O.R.C. § 2907.03, which criminalizes sexual battery when the offender "knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." O.R.C. § 2907.03(A)(2). In the majority of the cases Blazer cites, the courts expressly relied upon *Zeh* in describing the requirements placed upon the prosecution's efforts to establish the element of substantial impairment. *See State v. Rivera*, No. 97091, 2012 WL 1649801, at *4 (Ohio Ct. App. May 10, 2012); *State v. Messer*, No. 23779, 2011 WL 281132, at *3 (Ohio Ct. App. Jan. 14, 2011); *State v. Hatten*, 927 N.E.2d 632, 638 (Ohio Ct. App. 2010); *see also State v. Doss*, No. 88443, 2008 WL 323168, at *3 (Ohio Ct. App. Jan. 24, 2008). In the remaining two cases, *State v. Prater*, No. CA2006-01-017, 2006 WL 3833895 (Ohio Ct. App. Dec. 28, 2006), and *In re Thomas*, No. 83579, 83580, 2004 WL 2756224 (Ohio Ct. App. Dec. 2, 2004), the courts concluded the evidence at trial established the victims' level of voluntary intoxication was sufficient to satisfy the substantial impairment element without citing or distinguishing *Zeh*. Further, Blazer's proffered reading of the case law is at odds with the reasoning of the court of appeals in this case and also provides an incomplete picture of the findings of the cases he cites. *See, e.g., Rivera*, 2012 WL 1649801, at *5 (victim's testimony demonstrated she "**made conscious decisions** about her participation" in sexual activity) (emphasis added); *Hatten*, 927 N.E.2d at 640 (victim characterized "herself as both understanding and **being in control of** her actions") (emphasis added).

As Magistrate Judge McHargh noted, the victim denied leaving the message and, had Blazer proved to the jury the victim in fact left the message, it "could conceivably have impacted her credibility in the jury's eyes . . . ." (Doc. No. 10 at 17). Blazer argues "[t]he jury obviously had

5

difficulties with [the victim's] credibility" as he was acquitted on all other charges, and states this impeachment evidence would have caused the jury to conclude the victim's "participation in the events of that evening might have been more than she'd earlier attempted to portray." (Doc. No. 13 at 10). Contrary to Blazer's assertions, however, "awareness" is not an element of the offense, and "[t]he proper question" is not whether the victim "understood what was happening," but whether the victim's "ability to resist or consent is substantially impaired . . . ." O.R.C. § 2907.02(A)(1)(c); *cf. Doss*, 2008 WL 323168, at *5 (alleged victim's failure to "remember anything about the incident is not evidence that she did not consent to the sexual encounter or that appellant knew that she may have been substantially impaired"). There is no question the victim was voluntarily intoxicated, vomited, and fell asleep until she woke up with Blazer, naked and on top of her, with his penis inside of her. (Doc. No. 8-1 at 95). Blazer "acknowledged helping clean up her vomit . . . admitted he had sexual intercourse with her . . . [and] admitted [knowing] she was intoxicated." (Id. at 106). The impeachment Blazer argues should have occurred in this case, if not for the trial court's error, is tangential to the law of the case. Blazer merely speculates: if the jury heard the tape, it would conclude the victim left the message; if the jury concluded the victim left the message, it would conclude the victim lied about leaving the message solely because the message somehow implicated her ability to resist or consent on the night of the incident. This falls far short of establishing "actual prejudice." *See Brecht*, 507 U.S. at 637.

The contents of the message the victim allegedly left more than a year after the incident at most indicate only that the victim recalled the incident. (See Doc. No. 8-1 at 96). The court of appeals concluded the message was not relevant to a finding of guilty under O.R.C. § 2907.02(A)(1)(c), and Blazer fails to demonstrate this conclusion was erroneous. Therefore, I adopt Magistrate Judge McHargh's recommendation and conclude Blazer has not shown even a "reasonable possibility" the trial court's error in excluding the recording of the message "had

6

substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Blazer's objections are overruled.

## CONCLUSION

For the reasons stated above, I adopt Magistrate Judge McHargh's Report and Recommendation. Blazer's objection is overruled, and his petition is dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge